IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| Christopher Lyle Nichols <br>     Plaintiff | * <br> * <br> * | |
| | * | Case No.   7:22cv00565 |
| v. | * | |
| | * | |
| | * | |
| | * | |
| Synchrony Financial, d/b/a <br>     Synchrony Bank <br>     Defendant | * <br> * <br> * <br> * | |
| And | * <br> * | |
| Tenaglia & Hunt, P.A., P.C. <br>     Defendant | * <br> * | |

## COMPLAINT

Plaintiff Christopher Lyle Nichols complains against Synchrony Financial d/b/a Synchrony Bank and Tenaglia & Hunt, P.A., P.C. as follows:

### Introduction

1. The facts contained in the instant Complaint concern a debt that the Plaintiff settled on which collection activities continue.

2. This is an action for damages, costs, and attorneys' fees for violations of the federal Fair Debt Collections Practices Act, breach of contract, fraud, and intentional infliction of emotional distress.

3. This is also a request for equitable and injunctive relief.

### Parties

At the times herein mentioned:

4. Plaintiff Chris Nichols (hereinafter "the Plaintiff") was and is a natural person, a citizen and resident of the Commonwealth of Virginia.

5. Mr. Nichols is a "consumer" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(3).

6. Defendant Synchrony Financial d/b/a Synchrony Bank (hereinafter "Synchrony") is a corporation registered to do business in the State of Delaware and was and is a "creditor" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(4).

7. Defendant Tenaglia & Hunt, P.A., P.C. (hereinafter "Tenaglia & Hunt") is a stock corporation registered to do business in the Commonwealth of Virginia and was and is a "debt collector" by its own admission within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6).

## Jurisdiction & Venue

8. Jurisdiction of this action arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), as the Plaintiff asserts claims against one or more Defendants for violation of the Fair Debt Collection Practices Act. The Court has supplemental jurisdiction over the Debtor's breach of contract and tort claims under 28 U.S.C. § 1367.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to the Plaintiff's claims transpired in this jurisdiction.

### Facts

<u>Background</u>

10. In or around 2016, the Plaintiff opened a Lowe's credit card through Synchrony Bank.

11. The credit account with Synchrony Bank constitutes a "debt" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(5).

<u>Settlement</u>

12. In or around December 2017, the Plaintiff and his wife engaged the services of Freedom Debt Relief to assist them in settling their debts.

13. In or around June 2018, the Plaintiff was informed that Freedom Debt Relief had settled the debt owed to Synchrony Bank on the Plaintiff's Lowe's credit card. The terms of settlement were evidenced in a letter from Synchrony Bank to Christopher Nichols dated June 10, 2018. See Exhibit A.

14. The agreement provided for a settlement amount of $1,488.14 over 3 payments. The agreement stated the current balance owed and on which settlement was being made was $4,960.45.

15. Freedom Debt Relief issued payments on behalf of the Plaintiff to Synchrony Bank as required in the settlement agreement on the following dates and in the following amounts:

    a. $491.09 on 6/22/18

    b. $491.09 on 7/23/18

    c. $505.96 on 8/23/18.  See Exhibit B.

16. For some unknown reason, Synchrony alleged they were not able to deposit the payments.

17. On or about February 2020, Synchrony contacted Freedom Debt Relief concerning an outstanding and unresolved balance on the account.  During communications with Freedom Debt Relief, Synchrony acknowledged the deposit error for two of the settlement payments but Synchrony agreed to honor the terms of the original settlement agreement. See Exhibit C.

18. Given Synchrony's willingness to honor the terms of the original settlement agreement as memorialized in the June 10, 2018 letter, on March 9, 2020, Freedom Debt Relief issued a payment of $997.05 to Synchrony which was sent via overnight delivery with tracking to Synchrony.  See Exhibit D for a copy of FedEx proof of delivery for the check and Exhibit E for a copy of the final payment check with Synchrony's endorsement on the back.

19. The payment of $997.05 cleared and constituted fulfilment of the Plaintiff's performance under the June 10, 2018 settlement agreement.

20. Given the Plaintiff's fulfillment of his obligations pursuant to the settlement agreement, as modified and accepted by the Defendant Synchrony Bank, the Plaintiff understood, relied upon, and reasonably expected the debt to have been properly settled such that collection efforts would not continue.

## The Lawsuits Begin

### January 2021 Warrant in Debt

21. Approximately one year later, on January 13, 2021, the Plaintiff was surprised to learn that Tenaglia & Hunt, P.A., P.C. filed a Warrant in Debt in the Botetourt General District Court against the Plaintiff alleging damages in the amount of $3,510.31 plus costs for the Synchrony credit card account. See Exhibit F.

22. On or about January 13, 2021, the Plaintiff retained National Litigation Law Group, LLP, a firm the Plaintiff understands is affiliated with Freedom Debt Relief, to represent his interests in defense of the Warrant in Debt. See Exhibit G.

23. Based on the Botetourt County General District Court's online case record system, the hearing on the January 2021 Warrant in Debt was continued twice and finally non-suited by Tenaglia & Hunt on May 5, 2021. See Exhibits H(1) and H(2).

24. While the Plaintiff was represented by Counsel during the pendency of the January 13, 2021 Warrant in Debt, the Plaintiff has a general knowledge and understanding that the basis for Tenaglia & Hunt's dismissal of the January

2021 Warrant in Debt was the Defendants' acknowledgement the debt was previously settled.

25. Once again, given the Plaintiff's fulfillment of his obligations pursuant to the settlement and Tenaglia & Hunt's dismissal of the Warrant in Debt based on the settlement, the Plaintiff understood, relied upon, and reasonably expected the debt to have been properly settled and that no further collection activity would ensue.

February 2022 Warrant in Debt

26. Another year passed, and on February 22, 2022, Tenaglia & Hunt once again filed a Warrant in Debt against the Plaintiff alleging damages in the amount of $3,510.31 plus costs. See Exhibit I.

27. The Plaintiff phoned the attorney of record, Kevin Bell, Esq. and explained that the credit card account had been settled, that he had already been sued once for this previously and it was decided that the debt was settled, and that he did not understand why this continued to be an issue. Mr. Bell told the Plaintiff he would look into the matter and report back, though Mr. Bell noted during the conversation that Synchrony stated that the dispute of charges the Plaintiff had filed internally with Synchrony Bank was not valid. The Plaintiff sent Mr. Bell documentation supporting the Plaintiff's position that the debt had been settled, including but not limited to a copy of the settlement letter and proof of payments made pursuant to such settlement.

28. On March 11, 2022, the Plaintiff emailed Kevin Bell and asked why he had received a second copy of the Warrant in Debt, to which Mr. Bell responded and explained why the second copy was served and that "We are proceeding to request the court to dismiss the case and closing our file." See Exhibit J.

29. On or about April 13, 2022, Tenaglia & Hunt asked the Botetourt General District Court to dismiss the Warrant in Debt "Without Prejudice." See Exhibit K.

30. For the third time, given the Plaintiff's fulfillment of his obligations pursuant to the settlement and Tenaglia & Hunt's dismissal of the *second* Warrant in Debt based on the settlement, the Plaintiff understood, relied upon, and reasonably expected the debt to have been properly settled and that no further collection activity would ensue.

### August 2022 Warrant in Debt

31. Approximately three and a half months later, on or about August 1, 2022, the Plaintiff became aware that Tenaglia & Hunt had again filed a Warrant in Debt against the Plaintiff for the settled credit card account. See Exhibit L.

32. Yet again, the Plaintiff reached out to Kevin Bell, Esq., with Tenaglia & Hunt and reminded Mr. Bell that the account had been settled. By email dated August 11, 2022, Mr. Bell promised to "get back to you tomorrow." See Exhibit M.

33. While waiting to hear back from Mr. Bell, the Plaintiff filed a complaint with the Consumer Financial Protection Board on or about August 15, 2022.

34. Given that the Plaintiff had not heard back from Mr. Bell as promised, the Plaintiff retained counsel who, on Monday, August 22, 2022 filed a Notice of Appearance with Botetourt General District Court. The Notice of Appearance was faxed to both the Botetourt General District Court and to Tenaglia & Hunt, and both faxes were transmitted successfully. See Exhibits N and O.

35. On August 26, 2022, the Plaintiff received by mail from Tenaglia & Hunt a request from Tenaglia & Hunt to dismiss the suit as the account has been "paid/settled." As before, the request to dismiss appears to be without prejudice. See Exhibit P. Despite the Plaintiff's Counsel having faxed a notice of appearance to Tenaglia & Hunt, the August 26, 2022 request for dismissal of the suit was sent only to the Plaintiff and was not copied to counsel.

<u>Subsequent Communication from the Defendants</u>

36. Also on Friday, August 26, 2022, the Plaintiff received a phone call from Jenna Busse from Synchrony Consumer Relations in response to the CFPB complaint the Plaintiff filed early in August. During this phone call, the representative apologized for the miscommunication concerning the account and told the Plaintiff to expect an email from her clarifying that the account is paid/settled in full. Plaintiff later received a confirmatory letter dated September 8, 2022 stating the account had been settled. See Exhibit Q(1)

37. On August 26, 2022 after having spoken with Ms. Busse, the Plaintiff received two more communications concerning the Synchrony account from Synchrony:

    a. The first communication was a letter from Synchrony Bank dated August 20, 2022 stating, in essence, that upon review of the Plaintiff's dispute, Synchrony found the information they had provided concerning the Plaintiff's account was "accurate and complete." See Exhibit Q(2).

    b. The second communication from Synchrony Bank was an email that included a "Complaint ID" and stated that the "company has responded that it is still working on your issue." See Exhibit Q(3).

38. On Saturday, August 27, 2022, the Plaintiff received by mail a letter from Synchrony dated August 23, 2022 that reads, in part, "Please accept this letter as confirmation that we have verified that your account referenced above has been settled in full." See Exhibit R.

39. On Monday, August 29, 2022, the Plaintiff received another letter from Synchrony dated August 23, 2022 that stated Synchrony is reviewing their "records in order to provide you with a meaningful response." See Exhibit S.

40. On Friday, September 2, 2022, the Plaintiff received another request to dismiss the pending Warrant in Debt, with the box marked "Paid/Settled," but once again with no indication that such dismissal is with prejudice. As before and despite the Notice of Appearance by Counsel on behalf of the

Plaintiff, the pleading was mailed directly and only to the Plaintiff. See Exhibit T(1).

41. On Friday September 16, 2022 the Debtor received a letter from Synchrony Bank stated September 6, 2022 stating that the $997.05 payment was applied to his account on March 10, 2020 and that his account now has a $0.00 balance.  See Exhibit T(2).

### Credit Reporting

42. Synchrony Bank has reported its account to the credit reporting bureaus in a variety of inaccurate ways, recently reporting the account as a "Charge Off."  See Exhibit U.

43. Synchrony Bank's credit reporting as described is and has been derogatory and factually incorrect.

44. On August 17, 2022, the Plaintiff filed a dispute of Synchrony's credit reporting.  As of the date of filing the instant Complaint, at least one of the reporting agencies still shows the account as a "charge off."

**Claims & Requests for Damages**

**Counts 1-7**
**Seven Violations of**
**Fair Debt Collection Practices Act**

45. The Plaintiff adopts by reference and realleges the statements in the other paragraphs of this Complaint.

46. Defendant Tenaglia & Hunt, P.A., P.C.'s actions constitute willful and intentional harassment of the Plaintiff. Specifically, the following actions by

Tenaglia & Hunt, P.A., P.C. constitute separate, discrete, and actionable violations of the FDCPA:

    a.    The filing of the January 13, 2021 Warrant in Debt;

    b.    The filing of the February 22, 2022 Warrant in Debt;

    c.    The phone call exchange that the Plaintiff had to initiate with Tenaglia & Hunt to try to resolve the then-pending Warrant in Debt during which exchange the Plaintiff was told that his dispute on the account was not valid;

    d.    The filing of the August 1, 2022 Warrant in Debt; and

    e.    Two instances of Tenaglia & Hunt contacting the Plaintiff directly after having been sent a copy of the Notice of Appearance filed by the Plaintiff's Counsel.

47. Tenaglia & Hunt, in total, has violated the FDCPA as to the Plaintiff at least 7 times.

48. Given that the latest of the three Warrants in Debt was again dismissed not "*with prejudice*," the Plaintiff is concerned that yet another Warrant in Debt will be filed against him and that these egregious violations will continue.

49. The Plaintiff is entitled to recover additional damages from Defendant Tenaglia & Hunt for each of its failures to comply with any provision of the Fair Debt Collection Practices Act with respect to the Plaintiff, as provided by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(2)(A).

50. The noncompliance by Defendant Tenaglia & Hunt, which committed seven violations, was frequent, persistent, and severe in that three lawsuits were wrongfully filed against the Plaintiff.

51. The noncompliance by Defendant Tenaglia & Hunt was intentional.

52. The Defendant Tenaglia & Hunt and its employees acted with deliberate disregard for the Plaintiff's rights. Defendant Tenaglia & Hunt and its employees had knowledge of facts and intentionally disregarded facts that created a high probability of injury to the Plaintiff's rights and deliberately proceeded to act in conscious and intentional disregard of that high probability of injury to the Plaintiff's rights.

53. Wherefore the Plaintiff is entitled to additional damages in the amount of $7,000, being $1,000.00 per violation, as provided by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(2)(A).

54. The Plaintiff hereby reserves the right, if it is held that his additional damages are limited to $1,000.00 per action rather than $1,000.00 per violation, to prosecute only the first count for violation of the Fair Debt Collection Practices Act in this action and to sever and prosecute by means of independent actions the other counts for violation of the Fair Debt Collection Practices Act.

### Count 8
### Breach of Contract

55. The Plaintiff adopts by reference and realleges the statements in the other paragraphs of this Complaint.

56. The settlement agreement constitutes a binding contract pursuant to which the Plaintiff has performed.

57. The Plaintiff performed pursuant to the contract and relied on Synchrony's promises of settlement of the account in making the settlement payments.

58. Defendant Synchrony has violated the terms of the settlement agreement by attempting to collect on a debt that is, and has been since 2020, settled.

59. Despite the contractual settlement, Synchrony Bank continued to send collection notices to the Plaintiff and negatively reported on his credit report.

60. Despite the contractual settlement, Synchrony Bank caused three Warrants in Debt to be filed against the Plaintiff.

61. Despite the contractual settlement, the conflicting messages from Synchrony Bank as to the status of the account indicates that the Defendants' breach of contract is ongoing.

62. The Plaintiff has suffered actual harm by being sued three times and being harassed as a result of the Defendants' breach of contract.  The Plaintiff has spent a considerable amount of time making efforts to protect his interests, including time asking that Synchrony correct the notation on his accounts to honor the settlement agreement, communication with Freedom Debt Relief, communication with Tenaglia & Hunt, and now communication with the

Plaintiff's own counsel that he was forced to retain to protect himself as a result of the Defendants' breach of contract.

63. These are damages and costs for which the Plaintiff seeks recompense.

## Count 9
## Fraud

64. The Plaintiff adopts by reference and realleges the statements in the other paragraphs of this Complaint.

65. Defendants Synchrony and Tenaglia & Hunt have continued to collect on the Plaintiff's account that both had actual knowledge were settled.

66. Specifically, Synchrony has caused to be reported a materially false notation on the Plaintiff's credit report showing the account as a "charge off."

67. Further, Tenaglia & Hunt continued their collection attempts, including but not limited to making representations to the courts of the Commonwealth of Virginia concerning the status of the Synchrony account, that Tenaglia & Hunt knew were settled.

68. The Plaintiff seeks actual, consequential, and punitive damages against the Defendants for their fraudulent behavior.

## Count 10
## Intentional Infliction of Emotional Distress

69. The Plaintiff adopts by reference and realleges the statements in the other paragraphs of this Complaint.

70. The tort of intentional infliction of emotional distress requires plaintiff to show that

    "(1) The wrongdoer's conduct is intentional or reckless; (2) the conduct is outrageous and intolerable; (3) the wrongful conduct and the emotional distress are causally connected; and (4) the resulting distress is severe." *McDermott v. Reynolds*, 260 Va. 98, 530 S.E.2d 902, 903 (2000).

71. The Defendants had actual knowledge of the contractual settlement between Synchrony Bank and the Plaintiff and, despite such knowledge, proceeded to continue collection and institute three separate lawsuits against the Plaintiff.

72. The Defendants are liable to the Plaintiff for having tortiously and intentionally inflicted emotional distress upon the Plaintiff through its actions and those of its agents.

## PRAYER FOR RELIEF

73. The Plaintiff adopts by reference and realleges the statements in the other paragraphs of this Complaint.

74. The Plaintiff is entitled to recover the costs of this action, together with a reasonable attorneys' fees, as provided by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(3).

75. The Plaintiff is entitled to recovery for damages incurred as a result of the Defendants' breach of contract.

76. The Plaintiff is entitled to recovery for damages incurred as a result of the Defendants' fraud.

77. The Plaintiff is entitled to recovery for damages incurred as a result of the Defendant's intentional infliction of emotional distress.

WHEREFORE, the Plaintiff prays for relief as follows:

    a. A determination that Tenaglia & Hunt, P.A., P.C. has violated the FDCPA;

    b. A determination that both Synchrony Bank & Tenaglia & Hunt, P.A., P.C. have breached the contract between Synchrony Bank & the Plaintiff;

    c. A determination that both Synchrony Bank & Tenaglia & Hunt, P.A., P.C. have acted fraudulently in their encounters with the Plaintiff and that the Defendants committed fraud;

    d. A determination that both Synchrony Bank & Tenaglia & Hunt P.A., P.C. have tortiously inflicted emotional distress upon the Plaintiff;

    e. An award of damages for seven separate violations of the FDCPA;

    f. An award of damages for breach of contract;

g. An award of actual, consequential, and emotional damages for the ensuing loss the Debtor has endured due to the Defendants' illegal, fraudulent, and tortious behavior;

h. An award for the cost of his fees (attorney and otherwise) incurred in bringing this action;

i. An award for punitive damages due to the egregious nature of the Defendants' unlawful conduct.

j. An award for any further relief as this Court may deem appropriate and just.

        GILES & LAMBERT, P.C.

        /s/ Heather R. Parsons
        Heather R. Parsons
        Giles & Lambert, P.C.
        VSB No. 85108
        2001 S. Main Street
        Suite 102
        Blacksburg, VA 24060
        Attorney for Plaintiff