IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHRISTOPHER LYLE NICHOLS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:22-cv-00565 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| SYNCHRONY BANK, *et al.*, ) | |
| ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

Plaintiff Christopher Lyle Nichols ("Nichols") brought this action against Defendants Synchrony Bank ("Synchrony") and Tenaglia & Hunt, P.A., P.C. ("T&H"), asserting several violations of the Fair Debt Collection Practices Act ("FDCPA") and claims for breach of contract, fraud, and intentional infliction of emotional distress stemming from a debt previously owed on a Lowe's credit card. The matter is before the court on Synchrony's motion to dismiss all counts asserted against it. For the reasons explained below, Synchrony's motion to dismiss will be granted in part and denied in part.

I. **BACKGROUND**

This dispute began in 2016 after Nichols opened a Lowe's credit card through Synchrony Bank. (Compl. ¶ 10 [ECF No. 1].) After accruing a debt on the card, Nichols and his wife apparently contacted Freedom Debt Relief[1] ("FDR") to help them settle it. (*Id.* ¶ 12.) In June of 2018, Nichols was informed that FDR had settled the debt owed to Synchrony. (*Id.*

---

[1] Freedom Debt Relief is a company specializing in debt resolution. Once Freedom Debt Relief settles a customer's debt, the customer typically pays Freedom Debt Relief a fee based on a percentage of the previously owed debt.

¶ 13.) Specifically, Nichols owed $4,960.45 on his card, but, according to Nichols, Synchrony agreed to settle the debt for $1,488.14, which was to be paid in three installments by FDR. (*Id.* ¶ 14; Pl.'s Ex. A [ECF No. 1-1].)

Following this agreement, Nichols claims that FDR made the required payments to Synchrony on his behalf.[2] (*Id.* ¶ 15.) But for some unknown reason, Synchrony was unable to deposit the last two payments. (*Id.* ¶ 16.) As a result, Synchrony contacted FDR in February 2020 regarding the outstanding balance on Nichols's account. (*Id.* ¶ 17.) During the ensuing discussions between FDR and Synchrony, the bank agreed to honor its original settlement agreement pending clearance of a lump sum payment of the remaining balance—$997.05. (*Id*; Pl.'s Ex. C [ECF No. 1-3].) Given Synchrony's willingness to honor the terms of its agreement, FDR overnighted the lump sum payment to Synchrony. (*Id.* ¶ 18; Pl.'s Ex. D [ECF No. 1-4].) That payment was allegedly processed and accepted by Synchrony. (*Id.* ¶ 19.) At this point, Nichols understood his debt to be settled. (*Id.* ¶ 20.)

But on January 13, 2021, T&H—a debt collection agency—filed a Warrant in Debt in the Botetourt General District Court against Nichols, alleging that he owed $3,510.31 on the Synchrony credit card account. (*Id.* ¶ 21; Pl.'s Ex. F [ECF No. 1-6].) That same day, Nichols retained counsel to defend him against the Warrant in Debt. (*Id.* ¶ 22; Pl.'s Ex. G [ECF No. 1-7].) On May 5, 2021, this Warrant in Debt was "non-suited"[3] by T&H. (*Id.* ¶ 23; Pl.'s Ex.'s

---

[2] Specifically, Nichols asserts that two payments of $491.09 were issued to Synchrony on June 22, 2018 and July 23, 2018, and that a final payment of $505.96 was made on August 23, 2018. (*Id.* ¶ 15.)

[3] A nonsuit is a voluntary withdrawal or dismissal of a lawsuit by the party that filed it and allows the party to bring a second suit on the same cause of action. *See* Va. Code Ann. § 8.01-380. Generally speaking, a party may "suffer" its first nonsuit as a matter of right, without approval of the court or the opposing party. It results in a termination of the case "without prejudice," leaving open the possibility that the plaintiff will bring the same

H(1) &(2) [ECF Nos. 1-8, 1-9].) Nichols alleges that that basis for T&H's dismissal of the Warrant in Debt was T&H's knowledge that the debt had been previously settled. (*Id.* ¶ 24.)

Less than a year later, on February 22, 2022, T&H filed a second Warrant in Debt against Nichols, again alleging that $3,510.31 remained unpaid on the Synchrony credit card. (*Id.* ¶ 26; Pl.'s Ex. I [ECF No. 1-10].) Once notified of the pending Warrant in Debt, Nichols called T&H's attorney of record, Kevin Bell, who told Nichols that he would look into the matter. (*Id.* ¶ 27.) Nichols also provided Mr. Bell with documentation supporting his position that the debt had been settled, along with proof of the payments made to Synchrony on his behalf. (*Id.*) Thereafter, on March 11, 2022, Mr. Bell emailed Nichols that he was "proceeding to request the court to dismiss the case" and close the file. (*Id.* ¶ 28; Pl.'s Ex. J [ECF No. 1-11].) The Warrant in Debt was subsequently dismissed without prejudice on April 13, 2022. (*Id.* ¶ 29; Pl.'s Ex. K [ECF No. 1-12].)

On August 1, 2022, despite the prior dismissals, T&H filed a *third* Warrant in Debt alleging that $3,510.31 remained unpaid. (*Id.* ¶ 31; Pl.'s Ex. L [ECF No. 1-13].) Ten days later, Nichols again reached out to Mr. Bell and reminded him that the Synchrony account had been settled. (*Id.* ¶ 32.) While waiting to "hear back" from Mr. Bell, Nichols filed a complaint with the Consumer Financial Protection Board ("CFPB") on August 15, 2022, and retained counsel who, on August 22, 2022, filed a notice of appearance with the Botetourt General District Court. (*Id.* ¶¶ 33, 34; *see* Pl.'s Ex.'s N & O [ECF Nos. 1-15, 1-16].) Thereafter, on August 26, 2022, T&H seemingly requested that Nichols agree to its "non-suit" of the Third Warrant in

---

claims a second time. Thereafter, nonsuits are typically "with prejudice," unless they are granted at the discretion of the court or with the opposing party's consent. *See id.*

Debt because his account had been "paid/settled." (*Id.* ¶ 35.) Nichols did not agree to T&H's non-suit because, according to him, there was no indication that it would be "with prejudice" or that T&H would not file another Warrant in Debt in the future to collect on the same alleged debt. (*Id.* ¶ 40.)

Also on August 26, 2022, Nichols received a phone call from Jenna Busse from Synchrony Consumer Relations in response to the CFPB complaint that Nichols filed on August 15, 2022. (*Id.* ¶ 36.) During this phone call, Ms. Busse apologized for the miscommunication concerning Nichols's account and told Nichols to expect an email from her clarifying that his account was paid/settled in full. (*Id.*) Nichols subsequently received a letter on September 8, 2022, stating that his account had been settled as of August 22, 2022. (*Id*; Pl.'s Ex. Q(1) [ECF No. 1-18].)

Nichols received two additional communications from Synchrony on August 26, 2022, concerning his account. The first was a letter from Synchrony regarding its position that it "recently received [Nichols's] request to verify information in regard to [Nichols's account]," and that Synchrony "believe[s] the information previously provided is accurate and complete.' (*Id.* ¶ 37; Pl.'s Ex. Q(2) [ECF No. 1-19] (cleaned up).) The second communication from Synchrony provided a "Complaint ID" and stated that Synchrony "has responded that it is still working on [Nichols's] issue." (*Id*; Pl.'s Ex. Q(3) [ECF No. 1-20].)

Following these communications, Nichols received even more letters from Synchrony and T&H regarding his account and the third pending Warrant in Debt. On August 27, 2022, Nichols received a letter from Synchrony (dated August 23, 2022) stating that his account had been settled in full. (*Id.* ¶ 38; Pl.'s Ex. R [ECF No. 1-21].) Two days later, on August 29, 2022,

Nichols received another letter from Synchrony (also dated August 23, 2022) stating that Synchrony was still investigating Nichols's inquiry into the Lowe's account in order to "provide [him] with a meaningful response." (*Id.* ¶ 39; Pl.'s Ex. S [ECF No. 1-22].) Thereafter, on September 2, 2022, Nichols received another request from T&H to non-suit the third pending Warrant in Debt because the account was "Paid/Settled." (*Id.* ¶ 40; Pl.'s Ex. T(1) [ECF No. 1-23].) But Nichols refused to stipulate to the nonsuit because there was no indication that it would be with prejudice. (*See id.*) Finally, on September 16, 2022, Nichols received a letter from Synchrony (dated September 6, 2022) stating that the lump-sum payment of $997.05 was credited to Nichols's account on March 10, 2022, and that he did not owe anything further on his account. (*Id.* ¶ 41; Pl.'s Ex. T(2) [ECF No. 1-24].) Despite this communication, Nichols avers that Synchrony reported his Lowe's account to credit reporting bureaus as a "charge off"[4] and that at least one reporting agency still listed the account as a charge off. (*Id.* ¶¶ 42–44; Pl.'s Ex. U [ECF No. 1-25].) Nichols subsequently filed this action on September 30, 2022. (*See* ECF No. 1.)

Nichols's Complaint asserts ten counts based on the ordeal surrounding his Lowe's account: seven violations of the FDCPA (Counts I–VII); breach of contract (Count VIII); fraud (Count IX); and intentional infliction of emotional distress (Count X). (*Id.* ¶¶ 45–72.) Synchrony filed the instant motion to dismiss all counts brought against it on January 18,

---

[4] A charge off is "an accounting entry that does not affect the legal obligation to pay the debt or evidence an intent to discharge the debt." 4 William D. Hawkland et al., Uniform Commercial Code Series § 3-604:1 n.1, at Art. 3-1,079 (2020). Put differently, charge off, or "write off[,] is simply an internal recognition by a lender that an account is worthless after attempts at collection have failed. . . . When a lending institution writes off a bad debt, it is merely indicating that the debt is uncollectible. That is, it is no longer an asset of the institution. A write off does not mean that the institution has forgiven the debt or that the debt is not still owing." *Grayson v. Westwood Buildings L.P.*, 859 S.E.2d 651, 678 (Va. 2021) (cleaned up) (quoting *Ally Fin. Inc. v. State Treasurer*, 918 N.W.2d 662, 675 (2018)).

2022.[5] (*See* ECF No. 17.) The motion has been fully briefed by the parties. Because oral argument would not aid the court in deciding the legal issues raised in Synchrony's brief, the court will dispense with oral arguments on the motion. Therefore, the matter is ripe for disposition.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining facial plausibility, the court must accept all factual allegations in the complaint as true. *Id.* The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the complaint must "allege facts sufficient to state all the elements of [the] claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

---

[5] Counts I through VII assert violations of the FDCPA against T&H, but it has not moved for dismissal. The court, therefore, will only consider the common law claims brought against Synchrony for the purposes of evaluating this motion.

### III. ANALYSIS

Synchrony argues that Nichols's common law claims are preempted by the Fair Credit Reporting Act ("FCRA") or, in the alternative, that they are legally insufficient to state a claim for relief. (*See* Def.'s Mem. Supp. Mot. to Dismiss p. 4–5 [ECF No. 17].) For the following reasons, the court will grant Defendants motion in part and deny it in part.

#### A. FCRA Preemption

Synchrony's first argument is that Nichols's state law claims for breach of contract, fraud, and intentional infliction of emotional distress are preempted by the FCRA.

The FCRA was enacted "to protect consumers from the transmission of inaccurate information . . ., and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *McCauley v. Ally Bank*, No. 3:20CV00069, 2021 WL 955918, at *2 (W.D. Va. Mar. 15, 2021) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (cleaned up)). It imposes certain duties on credit reporting agencies and other furnishers of credit information. *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 147–48 (4th Cir. 2008).

The FCRA contains two seemingly conflicting preemption clauses. The first preemption clause, section 1681h(e), states:

> Except as provided in sections 1681n and 1681o of this title, *no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence* with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false

- 7 -

>information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (emphasis added). The FCRA's second preemption clause, § 1681t, provides that "[n]o requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under . . . section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." 15 U.S.C. § 1681t(b)(1)(F). Section 1681s–2, in turn, provides that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s–2(a)(1)(A). Because there is no binding authority clarifying which preemption clause applies here (assuming that one of them does), the court must determine whether either applies to preempt Nichols's common law claims.

Although the Fourth Circuit has not conclusively ruled on this apparent preemption conflict, *see Ross v. FDIC*, 625 F.3d 808, 814 n.* (4th Cir. 2010), nearly every district court in the Fourth Circuit, including a court in this district, has reconciled the conflict between these two preemption provisions by adopting the "'statutory approach'[6]—holding that § 1681t(b)(1)(F) only applies to state statutory claims and that § 1681h(e) only addresses state common law claims." *Bourdelais v. JPMorgan Chase Bank, N.A.*, 3:10CV670, 2012 WL 5404084, at *7 (E.D. Va. Nov. 5, 2012) (collecting cases); *see Hoback v. Synchrony Bank*, No. 6:19-CV-18, 2019 WL 2438794, at *2–3 (W.D. Va. June 11, 2019) (applying the statutory approach for the first time in the Western District of Virginia). The court finds this approach to be consistent

---

[6] In other words, the statutory approach harmonizes these two provisions, so that "neither is redundant." *Hoback*, 2019 WL 2438794, at *7.

with the applicable law and will apply the statutory approach to determine whether Nichols's common law claims are preempted by the FCRA.

Under the statutory approach, Nichols's common law claims for breach of contract, fraud, and intentional infliction of emotional distress are governed by § 1681h(e) of the FCRA, *not* § 1681t(b)(1)(F). Applying the plain text of that statute, Nichols's claims against Synchrony are not preempted by § 1681h(e) because these claims are common law allegations and do not relate to defamation, invasion of privacy, or negligence. *See Hoback*, 2019 WL 2438794, at *2–3 (holding that § 1681t(b)(1)(F) does not apply to preempt common law claims); *Jackson v. Ocwen Loan Servicing, LLC*, No. 3:15CV238, 2016 WL 1337263, at *11 (E.D. Va. Mar. 31, 2016) ("Following the well-reasoned statutory approach adopted by this Court, the FCRA does not preempt [plaintiff's] claim for breach of contract . . . because neither Section 1681t(b)(1)(F) nor Section 1681h(e) applies to the claim"); *Hazaimeh v. U.S. Bank Nat. Ass'n*, 94 F. Supp. 3d 741, 752–53 (E.D. Va. 2015) (holding that common law claims of fraud and breach of implied covenant of good faith and fair dealing were not preempted under § 1681h(e) because they "do not relate to defamation, invasion of privacy, or negligence"). Applying this persuasive authority, Nichols's common law claims for breach of contract, fraud, and intentional infliction of emotional distress fall outside the ambit of claims preempted by § 1681h(e) of the FCRA.

Accordingly, Nichols's common law claims are not preempted by the FCRA.

### B. Common Law Claims

Alternatively, Synchrony argues that Nichols's common law claims are insufficiently plead and fail as a matter of law. The court agrees as to Nichols's claims for fraud and intentional infliction of emotional distress, but not as to his breach of contract claim.

### 1. Breach of Contract

To state a claim for breach of contract, a plaintiff must plausibly allege the existence of "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 299 (Va. 2016) (cleaned up) (quoting *Filak v. George,* 594 S.E.2d 610, 614 (Va. 2004)). Under Virginia law, a contract exists if "the minds of the parties . . . meet in mutual agreement on every material" term. *Belmont v. McAllister*, 81 S.E. 81, 87 (Va. 1914). Specifically,

> [i]n order that there may be an agreement, the parties must have a distinct intention common to both and without doubt or difference. Until all understand alike, there can be no assent, and, therefore, no contract. Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode is agreed on by which it may be settled, there is no agreement . . . .

*Dean v. Morris*, 756 S.E.2d 430, 433–34 (Va. 2014) (quoting *Smith v. Farrell*, 98 S.E.2d 3, 7 (Va. 1957) (cleaned up)).

A contract is incomplete if "one or more material terms have been entirely omitted." *Dean*, 756 S.E.2d at 433 (quoting *Smith*, 98 S.E.2d at 7 (cleaned up)). A contract is uncertain if it contains all "material terms, but one of them is expressed in so inexact, indefinite or obscure

language that the intent of the parties cannot be sufficiently ascertained to enable the court to carry it into effect." *Id.* A contract with incomplete or uncertain terms is unenforceable. *Id.*

But Virginia courts are "reluctant to declare a contract void for indefiniteness and uncertainty" unless "the agreement provide[s] no reasonable basis for affording a remedy for its breach." *Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818, 820 (Va. 1981) (citing *High Knob, Inc. v. Allen*, 138 S.E.2d 49, 53 (Va. 1964)). "This is especially true where there has been partial performance." *High Knob*, 138 S.E.2d at 53 (cleaned up). Therefore,

> [w]hile a contract to be valid and enforceable must be so certain that each party may have an action upon it, reasonable certainty is all that is required. So where a contract is to some extent uncertain and ambiguous, it may be read in the light of surrounding circumstances, and if, reading it thus, its meaning may be gathered, the same will be enforced. But an agreement, in order to be binding, must be sufficiently definite to enable a court to give it an exact meaning, and must obligate the contracting parties to matters definitely ascertained or ascertainable.

*Dean v. Morris*, 756 S.E.2d at 433 (quoting *Smith*, 98 S.E.2d at 7 (cleaned up)). Accordingly, "[c]ontracts are not invalid merely because the parties differ as to the construction of particular language employed by them in expressing their contract." *Manss-Owens Co. v. H.S. Owens & Son*, 105 S.E. 543, 547 (Va. 1921). A difference of opinion about how to interpret a provision does not invalidate a contract "unless the provision is of primary importance affecting the substance of the contract, and is so vague and indefinite as to make it impossible to determine its meaning, or the substantial rights of the parties thereunder." *Id.*

Here, Nichols has adequately pleaded facts supporting the reasonable inference that he was the intended beneficiary of a contract between FDR and Synchrony, contemplating that

Nichols's debt would be satisfied once FDR paid $1,488.14.[7] (Compl. ¶ 13.) And while Synchrony argues that Nichols, not Synchrony, breached this 2018 agreement[8] (Def.'s Mem. Supp. Mot. to Dismiss at 5), Nichols has sufficiently demonstrated, for purposes of surviving a motion to dismiss, that there was an accord and satisfaction in 2020, by which Synchrony would extinguish Nichols's debt in exchange for FDR's forwarding of a lump sum payment of $997.05.

In *Lindsay v. McEnearney Assocs., Inc.*, the Virginia Supreme Court outlined the following principles of an accord and satisfaction that are equally pertinent here:

> Accord and satisfaction is a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the "accord" being the agreement, and the "satisfaction" its execution or performance.
>
> The thing agreed to be given or done in satisfaction must be offered and intended by the debtor as full satisfaction, and accepted as such by the creditor.
>
> Thus an accord and satisfaction is founded on contract embracing an offer and acceptance. The acceptance, of course, may be implied, and as a general rule, where the amount due is unliquidated, *i.e.,* disputed, and a remittance of an amount less than that claimed is sent to the creditor with a statement that it is in full satisfaction of the claim, or is accompanied by such acts or

---

[7] Virginia law provides that "[t]he third party beneficiary doctrine is subject to the limitation that the third party must show that the parties to the contract clearly and definitely intended it to confer a benefit upon him." *Professional Realty Corp. v. Bender,* 222 S.E.2d 810, 812 (Va. 1976). Third-party beneficiaries must be intended beneficiaries of a contract; mere incidental beneficiaries have no right to enforce a contract. Therefore, a "clear intent to benefit the third person must appear to enable him to sue on the contract; incidental beneficiaries cannot maintain an action thereon." *Valley Landscape v. Rolland*, 237 S.E.2d 120, 122 (Va. 1977) (quoting *N–P Newspapers v. Stott*, 156 S.E.2d 610, 612 (Va. 1967)). Here, FDR and Synchrony contracted with the aim of providing Nichols with the benefit of having his debt extinguished. As such, he may assert a breach of contract claim, even though he was not a direct "party" to the agreement.

[8] The court notes that it is unclear as to how Nichols would have breached an agreement entered into by FDR and Synchrony.

> declarations as amount to a condition that if accepted, it is accepted in full satisfaction, and the creditor accepts it with knowledge of such condition, then accord and satisfaction results.

531 S.E.2d 573, 576 (Va. 2000) (quoting *Virginia–Carolina Elec. Works, Inc. v. Cooper*, 63 S.E.2d 717, 718–19 (Va. 1951) (cleaned up)); *accord John Grier Constr. Co. v. Jones Welding & Repair, Inc.*, 383 S.E.2d 719, 720–21 (Va. 1989).

Applying these principles, even if the 2018 settlement agreement was breached when FDR failed to make the final two payments, Nichols has plausibly alleged that, in 2020, Synchrony agreed to "honor the original settlement" once it received a lump sum payment of the remaining balance of $997.05. (Pl.'s Ex. C.) Given Synchrony's willingness to honor the terms of its agreement, FDR overnighted the lump sum payment to Synchrony. (Compl. ¶ 18; Pl.'s Ex. D.) And that payment was allegedly processed and accepted by Synchrony. (*Id.* ¶ 19.) As such, Nichols has sufficiently pleaded that FDR performed (satisfaction) under this agreement (accord) by making the required lump sum payment.

Moreover, Nichols has sufficiently alleged that Synchrony breached its obligation by authorizing collection actions on his Lowe's account *after* the accord was satisfied. Indeed, *three* Warrants in Debt were filed against Nichols on January 13, 2021, February 22, 2022, and August 1, 2022, all asserting that he still owed a debt on his Lowe's account, and at least one of those was filed *after* Synchrony *admitted* that Nichols's account had been paid in full. (Pl.'s Ex.'s F, I, L, & T(2).) As such, Nichols has plausibly alleged that Synchrony breached its obligations owed under the 2020 agreement by continuing to authorize debt collection actions on the relevant account, despite its obligation to extinguish that debt once FDR made the requisite lump sum payment.

Nichols has also sufficiently alleged damages resulting from Synchrony's breach. Nichols spent a considerable amount of time taking remedial actions to defend his interest, which included retaining counsel to defend against the warrants in debt. It is axiomatic that litigation, in any form, costs money. And because no warrant in debt would have been filed if Nichols's debt was appropriately extinguished in 2020, these debt collection actions are causally related to Synchrony's alleged breach.

Accordingly, Nichols has sufficiently stated a claim for breach of contract and Synchrony's motion to dismiss Count VIII will be denied.

### 2. Fraud

Synchrony argues that Nichols has failed to state a claim for fraud because he does not allege, with specificity, the precise misrepresentations made by Synchrony, or that he relied on those representations.[9] (Def.'s Mem. Supp. Mot. to Dismiss at 6.) The court agrees.

To state a claim for actual fraud under Virginia law, Nichols must allege "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Merenstein v. St. Paul Fire & Marine Ins. Co.*, 142 F. App'x 136, 138 (4th Cir. 2005) (quoting *Evaluation Research Corp. v. Aleguin*, 439 S.E.2d 387, 390 (Va. 1994)). Moreover, a plaintiff may recover for actual fraud by showing reasonable reliance on a promise made by a defendant who had no intention of performing at the moment the promise was made. *Colonial Ford Truck Sales, Inc. v. Schneider,* 325 S.E.2d 91, 94 (Va. 1985) (when a promisor makes a promise

---

[9] Nichols does not specify which type of fraud he alleges in his Complaint. As such, the court construes his Complaint to assert a claim for actual fraud.

"intending not to perform, his promise is a misrepresentation of *present* fact, and if made to induce the promisee to act to his detriment, is actionable as an actual fraud") (cleaned up). Also, "[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Here, the complaint is devoid of the specific representations made by Synchrony on which Nichols relied. Moreover, Nichols has not alleged any facts indicating that, at the time Synchrony made its promise—via execution of the settlement agreement—it had no intention to perform. *See Colonial Ford*, 228 Va. at 677 ("While failure to perform an antecedent promise may constitute breach of contract, the breach does not amount to fraud."); *McMillion v. Dryvit Systems, Inc.*, 262 Va. 463, 471 (2001). While Nichols alleges that Synchrony falsely represented that execution of the settlement agreement would foreclose its collection attempts, nowhere in his complaint or supporting memoranda, does Nichols allege that, at the time Synchrony made those promises, it did not intend to perform them. "Such an allegation is critical to transform a garden-variety breach of contract case into an action for fraud and is absent here." *Smith v. James C. Hormel Sch. of Virginia Inst. of Autism*, No. CIV.A. 3:08-CV-00030, 2010 WL 1257656, at *7 (W.D. Va. Mar. 26, 2010). Because Nichols has not made any such allegation, he has failed to sufficiently allege that Synchrony's representations were made "knowingly and intentionally," and "with intent to mislead."

For these reasons, Nichols has failed to state a claim for fraud and Synchrony's motion to dismiss Count IX will be granted.

### 3. Intentional Infliction of Emotional Distress

Synchrony's final argument is that Nichols has failed to state a claim for intentional infliction of emotional distress ("IIED") because the facts alleged, taken as true, do not state such a claim. (Def.'s Mem. Supp. Mot. to Dismiss at 6–7.) The court agrees.

"A plaintiff seeking to recover for intentional infliction of emotional distress under Virginia law must allege that (1) the defendant's conduct was intentional and reckless; (2) the conduct was outrageous and intolerable; (3) the conduct caused the plaintiff's emotional distress; and (4) the plaintiff's distress was severe." *Hatfill v. New York Times Co.*, 416 F.3d 320, 336 (4th Cir. 2005) (citing *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991); *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974)). The plaintiff must establish all facts necessary to establish the cause of action. *Russo*, 400 S.E.2d at 163. The Supreme Court of Virginia has also stated that IIED claims are "not favored" and that "the court should allow no recovery in a doubtful case." *Ruth v. Fletcher*, 377 S.E.2d 412, 415–16 (Va. 1989).

First, Nichols must allege that Synchrony—through its post-settlement collections efforts—intended to cause him severe emotional harm. *See Ely v. Whitlock*, 385 S.E.2d 893, 897 (Va. 1989). The *Whitlock* court held that, to properly state a claim for IIED, a plaintiff must allege either (1) that defendants' actions were undertaken for the specific purpose of inflicting emotional distress upon the plaintiff; or (2) that defendants intended the specific conduct and knew or should have known that severe emotional distress would likely result. *Id.* Nichols falls well short of either requirement.

Nichols's complaint merely alleges that "the Defendants had actual knowledge of the contractual settlement" and "proceeded to continue collection." (Compl. ¶ 71.) There is simply

no allegation in the complaint that Synchrony intended to cause Nichols severe emotional distress, or that the continued collections efforts amounted to anything more than gross bureaucratic shortcomings. Nichols has therefore failed to allege facts sufficient to show the requisite intentionality.

Next, Nichols has failed to adequately allege that Synchrony's actions were "outrageous and intolerable." *Hatfill*, 416 F.3d at 336 (citing *Russo*, 400 S.E.2d at 162). The Supreme Court of Virginia described the requirements for a showing of "outrageous and intolerable" conduct in *Russo*:

> [I]t is insufficient for a defendant to have acted with an intent which is tortious or even criminal. Even if a defendant has intended to inflict emotional distress, or his conduct can be characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort, the requirement of [outrageousness] has not been satisfied. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

400 S.E.2d at 163 (cleaned up). Here, Nichols alleges that "Defendants had actual knowledge of the contractual settlement between Synchrony and the Plaintiff and, despite such knowledge, proceeded to continue collection and institute three separate lawsuits against the Plaintiff." (Compl. ¶ 71.) This claim falls well short of the standard necessary to show "outrageous and intolerable" conduct. *See Whitlock*, 385 S.E.2d at 897 (finding that an attorney's filing of allegedly frivolous disciplinary complaints against fellow attorney failed to state a claim for intentional infliction of emotional distress). Synchrony's post-settlement collection efforts may have been unsettling to Nichols, but they cannot be characterized as "beyond all possible bounds of decency." *Russo*, 400 S.E.2d at 163 (cleaned up).

Finally, Nichols has not sufficiently alleged that his emotional distress was "extreme." Characterizing "severe emotional distress," the Supreme Court of Virginia explained that "liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Russo*, 400 S.E.2d at 163. In *Russo*, the Supreme Court of Virginia affirmed the dismissal of an IIED claim in which the plaintiff alleged that she was "nervous, could not sleep, experiences stress and its physical symptoms, withdrew from activities, and was unable to concentrate at work." *Id.* The plaintiff in *Russo* offered much more specificity than Nichols does here. Indeed, Nichols simply alleges that "[he] suffered emotional distress and damages due to Synchrony's actions." (Pl.'s Mem. Opp. Mot. to Dismiss p.5 [ECF No. 23].) Nichols's rote recitation of an element of his claim, without any factual support, is inadequate under the applicable federal pleading standards.

Accordingly, Nichols has failed to state a claim for intentional inflection of emotional distress and Synchrony's motion to dismiss Count X will be granted.

### IV. CONCLUSION

For the reasons discussed above, Synchrony's motion to dismiss will be denied with respect to Count VIII and granted as to Counts IX and X.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 13th day of March, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE